**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

VALENTE SANDOVAL BARBOSA and )
CAROLINA GAYTAN, )
                                                )
                  **Plaintiffs,** )
                                                ) CIVIL ACTION
v.                                              )
                                                ) No. 12-2311-KHV
NATIONAL BEEF PACKING )
COMPANY, L.P., )
                                                )
                  **Defendant.** )
                                                )

**MEMORANDUM AND ORDER**

Valente Sandoval Barbosa and Carolina Gaytan, on behalf of themselves and others similarly situated, bring suit against National Beef Packing Company, L.P., seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This matter is before the Court on Plaintiffs' Motion for Conditional Certification Of Class Claims Under § 216(b) Of The FLSA (Doc. #9) filed July 23, 2012. For reasons stated below, the Court sustains the motion in part.

**Legal Standards**

Section 216(b) of the FLSA authorizes an opt-in class action on behalf of employees who are "similarly situated" to plaintiffs. See 29 U.S.C. § 216(b). This provision provides the exclusive procedural mechanism for class certification in actions under the FLSA. Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004). Though the FLSA does not define the phrase "similarly situated," the Tenth Circuit has approved an ad hoc approach by which courts determine on a case-by-case basis whether members of a putative class are similarly situated. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).

Under this approach, the Court engages in a two-step process. First, the Court makes an initial "notice stage" determination which requires nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan. Id. at 1102 (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)). By this determination, the Court decides whether a collective action should be certified for purposes of sending notice of the action to potential class members. Brown, 222 F.R.D. at 679. This initial step involves a lenient standard which typically results in conditional certification of a representative class. Gieseke v. First Horizon Home Loan Corp., 408 F. Supp.2d 1164, 1166 (D. Kan. 2006). Plaintiffs can show that they and putative class members are similarly situated by demonstrating that they were all subject to a common policy or plan. Brown, 222 F.R.D. at 679 (conditional certification requires only substantial allegations that putative class members subject to single policy or plan).[1]

**Facts**

In their complaint, plaintiffs allege that defendant operates a beef slaughtering and processing plant in Liberal, Kansas which employs more than 2,000 hourly employees. Complaint (Doc. #1) filed May 21, 2012 ¶¶ 3-4.

In support of their motion for conditional certification, plaintiffs submit nearly identical affidavits which state as follows.[2] From April of 2010 to the present, Barbosa worked as an hourly

---

[1] Under the second step which occurs at the close of discovery, the Court utilizes a stricter standard which requires evaluation of several factors, including (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Thiessen, 267 F.3d at 1102–03.

[2] In deciding the motion for conditional certification, the Court may consider affidavits (continued...)

production employee. Barbosa Affidavit ¶ 1, Exhibit 1 to <u>Plaintiffs' Memorandum</u> (Doc. #10). From March of 2000 to December of 2010, Gaytan worked as an hourly production employee. Gaytan Affidavit ¶ 1, Exhibit 2 to <u>Plaintiffs' Memorandum</u> (Doc. #10). At the Liberal facility, production work involves a slaughter department and a fabrication department. Barbosa and Gaytan Affidavits ¶ 2. The slaughter department, also known as the "Kill Floor," includes production lines where cattle are killed and disassembled into two sides of beef. <u>Id.</u> ¶¶ 3-4. The fabrication department, also known as the "Cut Floor," includes production lines where employees divide the sides of beef into various cuts of beef. <u>Id.</u> ¶¶ 3, 5.

As hourly production employees, plaintiffs became familiar with defendant's gang time pay practices and how they apply to hourly production employees. <u>Id.</u> ¶ 1. Defendant requires hourly production employees to use an electronic security card called an "ID badge." <u>Id.</u> ¶ 6. Upon arriving to work each day, employees must swipe their ID badges to enter the plant's security gate. <u>Id.</u> ¶ 6. After entering the plant, they again swipe the badges to clock in and out of their shifts. <u>Id.</u> ¶¶ 7-8. Despite the use of badges to clock in and out of shifts, defendant does not use that system

---

²(...continued)
and declarations in support of plaintiffs' allegations. <u>See</u> <u>Baldozier v. Am. Family Mut. Ins. Co.</u>, 375 F. Supp.2d 1089, 1093 (D. Colo. 2005) (motion for initial certification granted based on substantial allegations and plaintiffs' declarations).

The affidavits which plaintiffs signed are in Spanish. <u>See</u> Exhibits 1 and 2 to <u>Plaintiffs' Memorandum In Support Of Plaintiffs' Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA</u> ("<u>Plaintiffs' Memorandum</u>") (Doc. #10) filed July 23, 2012. Plaintiffs also provide copies of unsigned affidavits in English. <u>See</u> Exhibits 1A and 2A to <u>Plaintiffs' Memorandum</u> (Doc. #10). Plaintiffs assert that the English affidavits are translations of the Spanish affidavits, but provide no evidence to support the assertion. <u>See</u> <u>Plaintiffs' Memorandum</u> (Doc. #10) at 2 n.1 & n.2. Defendant has not objected to the affidavits. For purposes of ruling on conditional certification, the Court assumes that the unsigned copies are correct translations of the signed copies.

Plaintiffs' affidavits state that they worked at defendant's plant in St. Joseph, Missouri. Based on context, the Court assumes that this is a typographical error and that the affidavits should state that plaintiffs worked at the plant in Liberal, Kansas.

to record compensable wages. Id. ¶ 9. Instead, defendant uses a "gang time" system which pays hourly production employees only for the time that they work on a running production line. Id. ¶¶ 10-11. Defendant does not compensate hourly production employees for time spent at the plant but away from their respective production lines, or for time spent at the production line when it is not moving and producing product. Id. Defendant pays some hourly production employees for additional time, up to nine minutes, known as "Donning and Doffing" pay. Id. ¶ 12.

Under the "gang time" system, regardless whether they receive Donning and Doffing pay, hourly production employees typically spend uncompensated time before, during and after each shift performing – and waiting in line to perform – various tasks. Id. ¶ 13. The daily tasks which hourly production employees typically perform without pay include (1) pre-shift waiting in line to be issued equipment and/or to sanitize equipment; (2) pre-shift sanitizing equipment; (3) pre-shift walking from the locker room to sanitization stations and to the employee's assigned work station; (4) doffing protective gear during unpaid lunch breaks; (5) waiting in line to receive, and then receiving sanitary equipment during unpaid lunch breaks; (6) waiting in line to sanitize equipment and sanitizing equipment during unpaid lunch breaks; (7) re-donning protective gear during unpaid lunch breaks; (8) processing meat on the production line after the line has stopped running at the end of the shift; (9) post-shift waiting in line to sanitize equipment and then sanitizing equipment; (10) post-shift waiting in line for inspection of sanitized equipment; (11) post-shift waiting in line to receive protective equipment for the next shift; and (12) post-shift walking from the production floor to sanitization stations and to the locker room. Id. ¶ 14.

## Analysis

Plaintiffs seek conditional certification of a class comprised of "all hourly production

employees who have been subject to Defendant's 'gang time' [compensation] practices at Defendant's Liberal, Kansas facility for the period of three years prior to the date the Court conditionally certifies the class to the present." Plaintiffs' Motion For Conditional Certification Of Class Claims Under §216(b) Of The FLSA (Doc. #9), filed July 23, 2012, at 1. In addition, plaintiffs ask the Court to (1) approve their proposed notice; (2) require defendant to post the notice at its facility; (3) require defendant to provide certain information regarding individual class members; (4) designate plaintiffs as class representatives; and (5) appoint plaintiffs' counsel to act as class counsel.

## I.     Conditional Certification

Plaintiffs assert that for purposes of notice, they have adequately shown that defendant similarly treated putative class members under "a single decision, policy or plan" which did not fully compensate hourly production employees for widespread off-the-clock work. Defendant disagrees, arguing that putative class members are not similarly situated due to differences in compensation methods and production-related tasks. See Defendant's Opposition To Plaintiffs' Motion For Conditional Certification Of Class Claims Under § 2016(b) Of The FLSA ("Defendant's Opposition") (Doc. #16-2) filed September 21, 2012 at 8. Specifically, defendant asserts that (1) individual supervisors have discretion to change an employee's job position and compensation method on an ad hoc, day-to-day basis, id. at 9; (2) plaintiffs' claims fail on the merits, id. at 11; (3) each production job requires different combinations of equipment and tools which require differing amounts of time to put on and off and to clean, id. at 12-15; and (4) the Cut Floor and the Kill Floor are two physically separate and distinct departments which differ as to (a) production tasks, (b) regulatory requirements, (c) floor layouts, (d) schedules and (e) combinations of

equipment and tools, id. at 15.

While one or more of defendants' arguments may ultimately prevail, under the lenient standard which applies to conditional certification, they are not meaningful at this stage of the litigation. See In re Bank of Am. Wage & Hour Emp. Litig., No. 10-MD-2138-JWL, 2012 WL 4463285, at *14 (D. Kan. Sept. 27, 2012). On this record, plaintiffs have satisfied their minimal burden of substantially alleging that defendant similarly treated putative class members under "a single decision, policy or plan" which resulted in hourly production employees not receiving pay for off-the-clock duties. Specifically, plaintiffs submit evidence that defendant's gang time pay system did not fully compensate hourly production employees for time spent waiting in line for various tasks, sanitizing equipment, doffing and donning protective gear and other activities performed before or after the production line was running. See Barbosa and Gaytan Affidavits ¶ 14. Accordingly, on this record, the Court will conditionally certify the proposed class.[3]

## II. Proposed Notice

Plaintiffs ask the Court to approve the proposed notice attached as Exhibit 3 to Plaintiffs' Memorandum (Doc. #10). Defendant objects on several grounds.

First, defendant asserts that the proposed notice is misleading because it suggests that if employees do not opt in to the class, they risk losing any recovery and may be jeopardizing their rights to sue. See Defendant's Opposition (Doc. #16-2) at 23. Specifically, defendant points to two statements in the proposed notice. The first statement is located toward the beginning of the notice

---

[3] Defendant urges the Court to narrow the scope of the conditional class to include only those hourly employees who worked on the Cut Floor and received gang time. See Defendant's Opposition (Doc. #16-2) at 21-22. On this record, the Court declines to do so. Plaintiffs make substantial allegations that defendant applied "gang time" pay policies to hourly employees on both the Kill Floor and the Cut Floor.

and provides as follows: "Your options are explained in this notice. If you do not join, you risk losing any recovery." Proposed Notice at 1, Exhibit 3 to Plaintiffs' Memorandum (Doc. #10). The second statement is located under Section 6 entitled "How do I join?" and provides as follows: "If you fail to [join], you will not be allowed to participate in any recovery for the federal overtime claims in this lawsuit and may be jeopardizing your right to sue." Id. § 6. The following section, Section 7 entitled "What if I do nothing?," further explains as follows:

> In the alternative [to joining the lawsuit], you can also start your own lawsuit against National Beef. To do so, you'll have to hire your own lawyer for that lawsuit, and you'll have to prove your claims. If you do not join this lawsuit so that you can pursue your own lawsuit against National Beef, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Id. § 7. Taken as a whole, the Court finds that the proposed notice accurately describes employees' rights should they choose not to join the lawsuit.

Second, defendant asserts that the proposed notice does not accurately describe its defenses or give potential opt-in plaintiffs information from which to evaluate its position in the case. See Defendant's Opposition (Doc. #16-2) at 23-24. Section 4 entitled "How does National Beef answer?" states as follows:

> National Beef denies that it has violated the Fair Labor Standards Act. National Beef asserts that at all times its pay practices complied with the FLSA and that employees were paid properly.

Proposed Notice § 4, Exhibit 3 to Plaintiffs' Memorandum (Doc. #10). Defendant asks to substitute the following language:

> Defendant denies Plaintiffs' allegations and asserts various defenses to Plaintiffs' claims. For example, Defendant asserts that employees' donning and doffing activities do not take a measurable amount of time and often only a few seconds; that such donning and doffing activities occur before employees start compensable work duties and/or after employees finish compensable work duties; that donning and doffing and cleaning of certain items such as mesh aprons and gloves and arm and

-7-

>belly guards is paid for by the nine minutes daily added to employees' paychecks; that time spent donning and doffing is excluded from measured working time by the express terms of the collective bargaining agreement (CBA) or by custom or practice under the CBA; and that all overtime hours worked by employees are properly compensated by Defendant.

Defendant's Opposition (Doc. #16-2) at 24. The extra language which defendant proposes is unnecessary and disproportionate to the level of detail contained in the remainder of the proposed notice.[4]

Third, defendant asserts that the proposed notice does not sufficiently advise class members regarding the possibility of travel or the full range of discovery obligations that may be imposed if they join the lawsuit.[5] See Defendant's Opposition (Doc. #16-2) at 24. Section 9 entitled "Do I have to do anything to help out with the lawsuit once I join?" states as follows:

>If you opt in, the Plaintiffs' lawyers will be your lawyers and will handle most of the presentation of the case. From time to time, the Plaintiffs' lawyers might ask you for information to assist in presenting the case. You may also be asked to answer questions from a lawyer representing National Beef prior to trial for part of a day.

---

[4] For instance, Section 3 entitled "What does the lawsuit complain about?" states as follows:

>In this lawsuit, the Plaintiffs claim that National Beef failed to pay them and similarly situated hourly employees for all "hours worked" as defined by law. The Plaintiffs claim that because National Beef did not pay employees for all hours worked as required by law, they, and all others with similar claims, are owed unpaid overtime compensation, as well as additional damages allowed by law, and attorneys' fees.

Proposed Notice § 3, Exhibit 3 to Plaintiffs' Memorandum (Doc. #10).

[5] Defendant also asserts that the proposed notice should advise putative class members that they may have to share responsibility for defendant's costs should it prevail in the litigation. See Defendant's Opposition (Doc. #16-2) at 24-25. Plaintiffs respond with evidence that their agreement with counsel forecloses that possibility. See Plaintiffs' Reply Memorandum In Support Of Plaintiffs' Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA ("Plaintiffs' Reply") (Doc. #20) at 10. Accordingly, the Court finds that such language is unnecessary.

-8-

> Should there be a trial, some Plaintiffs might testify. Regardless, if you are asked to give information, the attorneys will work with you so that the process is as convenient for you as possible.

Proposed Notice § 9, Exhibit 3 to Plaintiffs' Memorandum (Doc. #10). In response to defendant's objection, plaintiffs agree to modify the language as follows:

> If you opt in, the Plaintiffs' lawyers will be your lawyers and will handle most of the presentation of the case. From time to time, the Plaintiffs' lawyers might ask you for information to assist in presenting the case. You may also be asked to answer questions from a lawyer representing National Beef prior to trial for part **or all** of a day. Should there be a trial, some **of the** Plaintiffs **including you, may be called to** testify. Regardless, if you are asked to give information, the attorneys will work with you so that the process is as convenient for you as possible.

See Plaintiffs' Reply (Doc. #20) at 10 (emphasis added). The Court finds that the proposed modifications adequately address defendant's concerns.

The Court notes that proposed notice does not provide a deadline for individuals to opt in to the class. Plaintiffs shall modify the proposed notice and consent form to provide a reasonable time – between 60 to 90 days – for individuals to return consent forms and opt in to the class. With such modification, the Court approves the form of proposed notice.

**III.     Requiring Defendant To Post Notice At The Liberal Facility**

Plaintiffs ask that in addition to mailing the notice to putative class members, the Court require defendant to post the notice – both in English and in Spanish – at time clocks and other conspicuous locations in the Liberal facility. Plaintiffs' Memorandum (Doc. #10) at 12-13. Citing cases from jurisdictions outside the Tenth Circuit, plaintiffs assert that courts "often order other forms of notice to employees in addition to mailing." Id. at 12. Defendant objects on grounds that, inter alia, the postings (1) would not reach former employees; (2) would not provide consent forms; (3) would cause disruption in the workplace; and (4) would require defendant to train management

on how to address questions regarding the notices. Defendant's Opposition (Doc. #16-2) at 25-26. On this record, plaintiffs have not shown that posting the notice at the Liberal facility is necessary. In particular, it appears that the posting would reach the same potential plaintiffs, i.e. current employees, for whom defendant would most likely have current address information. See, e.g., Darrow v. WKRP Mgmt., LLC, No. 09-cv-01613-CMA-BNB, 2012 WL 638119, at *7 (D. Colo. Feb. 28, 2012). If that proves not to be the case, i.e. if it turns out that defendant does not have current addresses for many of its current employees, plaintiffs may renew their request.

**IT THEREFORE ORDERED** that Plaintiffs' Motion for Conditional Certification Of Class Claims Under § 216(b) Of The FLSA (Doc. #9) filed July 23, 2012 be and hereby is **SUSTAINED in part**. Pursuant to 29 U.S.C. § 216(b), the Court conditionally certifies a class comprised of all hourly production employees who have been subject to defendant's "gang time" compensation practices at defendant's facility in Liberal, Kansas, for the period of three years prior to the date of this order. In addition, the Court approves Valente Sandoval Barbosa and Carolina Gaytan as class representatives and appoints plaintiffs' counsel, Mark A. Kistler and Michael F. Brady of Brady & Associates Law Office, to serve as counsel for the conditional class.

**IT IS FURTHER ORDERED** that the Court approves plaintiffs' proposed notice, as modified. See supra at 9-10.[6] On or before **February 14, 2013**, defendant shall provide plaintiffs the names and last known addresses of putative class members in an easily mailed format, such as Microsoft Excel. Within 30 days of receiving such information, plaintiffs shall mail notice to

---

[6] As noted, the Court approves the proposed notice subject to modifications which include (1) plaintiffs' proposed modifications to Section 9 regarding discovery obligations which may be imposed on class members; and (2) a reasonable deadline between 60 to 90 days for individuals to opt in to the class.

putative class members. If notices sent to specific individuals are returned as undeliverable, defendant shall provide last-known telephone numbers for those individuals within five days of receiving notice from plaintiffs' counsel.

Dated this 31st day of January, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge