IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **VALENTE SANDOVAL BARBOSA and CAROLINA GAYTAN, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**NATIONAL BEEF PACKING COMPANY, LLC,**<br><br>Defendant. | CIVIL ACTION<br><br>No. 12-2311-KHV |

## MEMORANDUM AND ORDER

Valente Sandoval Barbosa and Carolina Gaytan, on behalf of themselves and others similarly situated, bring suit against National Beef Packing Company, LLC, seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This matter is before the Court on the parties' Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement (Doc. #55) and plaintiffs' Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #56), both filed October 14, 2013. For the reasons stated below, the Court overrules the motions.

**I.    Factual Background**

    **A.    Lawsuit And Claims**

Defendant operates a beef slaughtering and processing plant in Liberal, Kansas which employs more than 2,000 hourly employees. See Complaint (Doc. #1) filed May 21, 2012 ¶¶ 3-4; Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement ("Joint Motion") (Doc. #55) at 2. Defendant requires hourly production employees to use an electronic security card, or "ID badge." Barbosa Aff. ¶ 6, Ex. 1 to Plaintiffs' Memorandum In

Support Of Plaintiffs' Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA ("Plaintiffs' Memorandum") (Doc. #10) filed July 23, 2012; Gaytan Aff. ¶ 6, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). Upon arriving at work each day, employees must swipe their ID badges to enter the plant's security gate. Barbosa Aff. ¶ 6, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶ 6, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). After entering the plant, they again swipe the badges to clock in and out of their shifts. Barbosa Aff. ¶¶ 7-8, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶¶ 7-8, Ex. 2 to Plaintiffs' Memorandum (Doc. #10).

Defendant does not use the badges to record compensable wages. Barbosa Aff. ¶ 9, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶ 9, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). Instead, defendant uses a "gang time" system, which pays hourly production employees only for the time that they work on a running production line. Barbosa Aff. ¶¶ 10-11, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶¶ 10-11, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). Defendant does not compensate hourly production employees for time spent at the plant but away from their respective production lines, or for time spent at the production line when it is not moving and producing product. Barbosa Aff. ¶¶ 10-11, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶¶ 10-11, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). Defendant pays some hourly production employees for additional time, up to nine minutes, known as donning and doffing pay. Barbosa Aff. ¶ 12, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶ 12, Ex. 2 to Plaintiffs' Memorandum (Doc. #10).

Under the "gang time" system, regardless whether they receive donning and doffing pay, hourly production employees typically spend uncompensated time before, during and after each shift performing — and waiting in line to perform — various tasks. Barbosa Aff. ¶ 13, Ex. 1 to

Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶ 13, Ex. 2 to Plaintiffs' Memorandum (Doc. #10). The daily tasks which hourly production employees typically perform without pay include (1) pre-shift waiting in line to receive and/or to sanitize equipment; (2) pre-shift sanitizing equipment; (3) pre-shift walking from the locker room to sanitization stations and to assigned work stations; (4) doffing protective gear during unpaid lunch breaks; (5) waiting in line to receive and receiving sanitary equipment during unpaid lunch breaks; (6) waiting in line to sanitize equipment and sanitizing equipment during unpaid lunch breaks; (7) re-donning protective gear during unpaid lunch breaks; (8) processing meat on the production line after the line has stopped running at the end of the shift; (9) post-shift waiting in line to sanitize equipment and sanitizing equipment; (10) post-shift waiting in line for inspection of sanitized equipment; (11) post-shift waiting in line to receive protective equipment for the next shift; and (12) post-shift walking from the production floor to sanitization stations and to the locker room. Barbosa Aff. ¶ 14, Ex. 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff. ¶ 14, Ex. 2 to Plaintiffs' Memorandum (Doc. #10).

On May 21, 2012, plaintiffs Valente Sandoval Barbosa and Carolina Gaytan filed putative collective action claims for alleged violations of the FLSA. See Complaint (Doc. #1). Plaintiffs assert that defendant's gang time compensation system fails to fully compensate hourly production workers for all hours worked. See Joint Motion (Doc. #55) at 11. Under the FLSA, plaintiffs seek damages for straight-time and overtime compensation and liquidated damages for time spent performing uncompensated tasks. See Complaint (Doc. #1) at 7 ¶¶ a, c. Plaintiffs also seek attorneys' fees, expert fees and other costs and expenses. Id. at 7 ¶ d. Plaintiffs do not seek recovery for the time spent donning and doffing protective equipment, but they assert that these activities serve as principal activities under Section 203(c) of the FLSA, i.e., that they serve

3

as the "bookends" of the continuous workday such that all activity occurring between the bookends is compensable.  See Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement (Doc. #55) at 4.

### B. Conditional Class Certification And Notice

On July 23, 2012, plaintiffs filed their Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA (Doc. #9).  In support, plaintiffs submitted nearly identical affidavits.  The affidavits stated that from April of 2010 until filing the motion on July 23, 2012, Barbosa worked as an hourly production employee.  Barbosa Aff. ¶ 1, Ex. 1 to Plaintiffs' Memorandum (Doc. #10).  From March of 2000 to December of 2010, Gaytan worked as an hourly production employee.  Gaytan Aff. ¶ 1, Ex. 2 to Plaintiffs' Memorandum (Doc. #10).

On January 31, 2013, the Court sustained plaintiffs' motion in part.  See Memorandum and Order (Doc. #21) at 10-11.  The Court conditionally certified a class of "all hourly production employees who have been subject to defendant's 'gang time' compensation practices at defendant's facility in Liberal, Kansas, for the period of three years prior to [January 31, 2013]."  Id. at 10.  The Court also approved Barbosa and Gaytan as class representatives and appointed plaintiffs' counsel, Mark A. Kistler and Michael F. Brady of Brady & Associates Law Office, to serve as counsel for the conditional class.  See id. at 10.  The Court ordered conditions about notice to putative class members, and 480 eligible plaintiffs opted in to the litigation.[1]  See id.; Joint Motion (Doc. #55) at 4.

---

[1] Throughout their Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #56), plaintiffs state that 479 plaintiffs are part of the conditionally certified class.  See id. at 4, 7, 12.  For consistency, throughout the remainder of this order, the Court will refer to the class as containing 480 conditional class members.

### C. Settlement

The parties participated in mediation on July 10, 2013, and thereafter they agreed to settle. Under the terms of the settlement, National Beef will pay a total of no more than $350,000, which the parties assert is to be allocated as follows:

> $201,680 available to the 480 collective action members;
> $100,320 for attorneys' fees;
> $41,000 for litigation costs;[2]
> $3,500 service payment to plaintiff Barbosa; and
> $3,500 service payment to plaintiff Gaytan.

Unopposed Motion For Approval Of Attorneys' Fees and Costs (Doc. #56) at 7; Settlement Agreement ¶ 3(a) & (c), Ex. A to Joint Motion (Doc. #55).

### 1. Allocation Calculation Among Plaintiffs

The settlement agreement defines opt-in plaintiffs as "all eligible current and former hourly production employees who work or worked in National Beef's Liberal, Kansas facility . . . who opted-into th[is] litigation." Settlement Agreement at 1, Ex. A to Joint Motion (Doc. #55). Under the settlement agreement,

> Each Opt-In Plaintiff shall be allocated (a) a minimum payment based upon one week worked in a Gang Time Position without donning and doffing pay or (b) a share of the Total Settlement Amount ("Share"). Each Opt-In Plaintiff's Share shall be calculated according to the following formula agreed upon by the parties:
> Opt-In Plaintiff Share Numerator: combined point total for number of weeks worked in a Gang Time position during the three-year period preceding the date that the Opt-In Plaintiff's consent form was filed with the Court through July 10,

---

[2] The parties agree that plaintiffs are entitled to $41,000 in costs. See Settlement Agreement ¶ 3(a), Ex. A to Joint Motion (Doc. #55). Without explanation, plaintiffs assert that the allocation of settlement proceeds includes $49,100.23 in costs. See Unopposed Motion for Approval of Attorneys' Fees and Costs (Doc. #56) at 7. Plaintiffs' counsel seeks court approval of costs in the amount of $46,095.23 or $46,000 — $5,000 more than the agreed amount listed in the settlement agreement that Gaytan and Barbosa signed. See id; see also Joint Motion (Doc. #55) at 7. That $5,000 reduces the recovery of the collective action members. The Court will assume that this is an oversight and that plaintiffs' counsel actually requests costs of $41,000, the agreed amount. See Settlement Agreement ¶ 3(a), Ex. A to Joint Motion (Doc. #55).

5

> 2013 ("Combined Opt-In Points"). Opt-In Plaintiff shall receive one point for each week worked in a Gang Time position that did not receive an additional nine minutes of donning and doffing pay ("Non-DD Pay Position") and 1.5 points for each week worked in a Gang Time position that received an additional nine minutes of donning and doffing pay ("DD Pay Position"). All Opt-Ins [sic] Plaintiffs' [sic] shall receive a minimum of one Opt-In Point.
>
> Opt-In Plaintiff Share Denominator: total number of Opt-In Points by all Opt-In Plaintiffs who worked as hourly production employees in Gang Time positions.
>
> Opt-In Plaintiff Share Distribution Percentage: Opt-In Plaintiff Share Numerator divided by Opt-In Plaintiff Share Denominator.
>
> Opt-In Plaintiff Share Payment: Share Distribution Percentage multiplied by the Total Settlement Amount minus Court-approved attorneys' fees and costs; Court-approved service awards (as specified above). Opt-In Plaintiff Share Payments are subject to the tax treatment set forth in Paragraph 4.

Id. ¶ 3(b).

### 2.     Settlement Agreement And Release Of Claims

The settlement agreement consists of an English and Spanish version of what hopefully is the same agreement. See Settlement Agreement, Ex. A to Joint Motion (Doc. #55). A corporate representative and general counsel of National Beef Packing Company, LLC, and plaintiffs' counsel Mark Kistler signed the English version, and named plaintiffs Barbosa and Gaytan signed the Spanish version. See id. The record does not reflect who translated the English document into Spanish, and the parties did not provide a translation declaration to the Court or assert that the translation is accurate.

### 3.     Service Payments

Gaytan and Barbosa each request service payments of $3,500 in addition to their share of the net settlement. The record shows that Barbosa and Gaytan both provided factual details to counsel and gave their depositions. Plaintiffs' counsel asserts that Barbosa and Gaytan incurred some risk that future employers may be reluctant to hire them because they are named plaintiffs

6

here.  See Joint Motion (Doc. #55) at 15.  The record does not reflect how many hours Gaytan and Barbosa spent on duties related to their status as class representatives.

### 4. Proposed Release

The proposed settlement release, which opt-in plaintiffs must sign and return to receive their portion of the settlement, states as follows:

> I wish to take part in the settlement.  By signing and returning this form, I understand that I am releasing and discharging National Beef, and its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit pans [sic], plan fiduciaries, and/or administrators, and assigns, and all persons acting by, through, under or in concert with any of them, from any and all claims for unpaid minimum wages, overtime, improper deductions, and other wage-related claims under any federal, state, or local law, including, but not limited to, all claims asserted, or that could have been asserted and that arise from or relate to facts brought forth in this lawsuit.

Proposed Notice Of Settlement at 4, Ex. C to Joint Motion (Doc. #55).

### 5. Requested Attorneys' Fees And Costs

As part of the settlement agreement, defendants agreed to not object to or oppose the award of attorneys' fees or costs plaintiffs' counsel requested provided the requests were consistent with the allocations in the settlement agreement.  See Settlement Agreement ¶ 3(c), Ex. A to Joint Motion (Doc. #55).  Attorneys' fees or costs which the Court does not approve will be distributed among the plaintiffs. Id.

## II. Legal Standards

### A. FLSA Collective Action Settlement

The parties ask the Court to approve their proposed settlement of collective action claims under the FLSA.  The provisions of the FLSA are not subject to private negotiation or bargaining between employers and employees because the underlying legislative policies prohibit employees from waiving their rights to the minimum statutory rates and liquidated damages.  See

Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982); Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010); Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 718 (E.D. La. 2008). Therefore, employees may settle or compromise FLSA back wage claims in one of two ways. Lynn's Food Stores, Inc., 679 F.2d at 1352. First, under 29 U.S.C. § 216(c), the Secretary of Labor may supervise the payment of unpaid wages to employees. See id. at 1353. Second, in the context of a private action to recover unpaid wages, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. See id.; Hohnke v. United States, 69 Fed. Cl. 170, 178-79 (Fed. Cl. 2005). Here, the parties seek court approval of a settlement obtained in the context of a private action to recover unpaid wages.

When employees file suit to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination that the settlement is fair and reasonable. See Lynn's Food Stores, Inc., 679 F.2d at 1353. If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. See id. at 1354.

To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. See id. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. See Peterson v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011). Further, when a plaintiff has voluntarily assumed the fiduciary role of class representative, the Court must determine "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative

8

class members." Id. (quoting Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978)). The Court must make some final class certification finding before it can approve an FLSA collective action settlement.[3]  McCaffrey v. Mortg. Sources, Corp., 08-2660-KHV, 2011 WL 32436, at *3 (D. Kan. Jan. 5, 2011).

### B. Award Of Attorneys' Fees Under The FLSA

The FLSA requires that settlement agreements include an award of reasonable attorneys' fees and the costs of the actions. 29 U.S.C. § 216(b); Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan. 19, 2012); Peterson, 2011 WL 3793963, at *4. Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. Gambrell, 2012 WL 162403, at *3 (citing Wright v. U-Let-Us Skycap Servs., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986)). When a common fund is created by settlement, courts have applied one of two methods to determine reasonable attorneys' fee awards: a percentage of the fund or the lodestar method. See Rosenbaum v.

---

[3] The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b). In part, Section 216(b) states as follows:

> An action to recover [for FLSA violations] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

In the Tenth Circuit, district courts use a two-step process to determine whether plaintiffs are "similarly situated" for purposes of Section 216(b). First, the courts apply a fairly lenient standard for purposes of conditional certification during the course of discovery. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001). Then, during the second stage, usually prompted by a motion to decertify, the courts apply a stricter standard. See id.

MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994). In all cases, the Court must consider the factors listed in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Rosenbaum, 64 F.3d at 1445; Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Del Valley Citizens' Council For Clean Air, 483 U.S. 711, 725 (1987); Fulton v. TLC Lawn Care, Inc., No. 10-2645-KHV, 2012 1788140, at *5 (D. Kan. May 17, 2012).

The 12 Johnson factors are as follows: (1) time and labor required, (2) novelty and difficulty of the questions presented in the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards in similar cases. Rosenbaum, 64 F.3d at 1445; Johnson, 488 F.2d at 717-19.

**III.   Analysis**

    **A.   Settlement Approval**

To approve the proposed FLSA settlement here, the Court must first make a final certification ruling, determine that the terms of the proposed settlement are fair and reasonable, and see that the settlement contains an award of reasonable attorneys' fees. See Lynn's Food Stores, Inc., 679 F.2d at 1354; McCaffrey, 2011 WL 32436, at *2.

1.      **Final Collective Action Certification**

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b). In making a final collective action determination, the court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Thiessen v. GE Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Kaiser v. At The Beach, Inc., No. 08-cv-5886-TCK-FHM, 2010 WL 5114729, at *3 n.6 (N.D. Okla. Dec. 9, 2010). Generally at this stage, because discovery has proceeded, the Court can make its final certification decision with the benefit of more information about the parties and the claims. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).

In support of plaintiffs' application for conditional collective action certification, they provided their signed affidavits in Spanish and unsigned translations in English. See Barbosa Aff., Ex. 1A & 1 to Plaintiffs' Memorandum (Doc. #10); Gaytan Aff., Ex. 2A & 2 to Plaintiffs' Memorandum (Doc. #10). Plaintiffs asserted that the English affidavits were translations of the Spanish affidavits, but they provided no evidence to support their assertion. See Plaintiffs' Memorandum (Doc. #10) at 2 n.1 & n.2. Defendant did not object to the affidavits. For purposes of ruling on conditional certification, the Court assumed that the English copies were correct translations of the Spanish copies. See Memorandum And Order (Doc. #21) entered January 31, 2013 at 3 n.2.

Plaintiffs apparently rely on Gaytan's and Barbosa's original affidavits to support the application for final class action necessary for the Court to approve the settlement. Plaintiffs have not provided a translator's declaration or certification. Although it appears from the

11

parties' brief that plaintiffs are similarly situated, the affidavits are insufficiently reliable for purposes of determining final collective action certification. See Xavier v. Belfor USA Group, Inc., Nos. 06-491, 06-7084, 2008 WL 4862533, at *3 (E.D. La. Sept. 23, 2008) (not considering affidavits supporting motion for collective action certification when plaintiff failed to identify translator and his or her qualifications or proffer that English translations of Portugese affidavits were accurate). Therefore, the Court will not grant final collective action certification until plaintiffs provide the translator's identity, qualifications and skills and the translator's certification or declaration of the affidavits' accuracy.

### 2. FLSA Collective Action Proposed Settlement

To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorneys' fees. See McCaffrey, 2011 WL 32436, at *2.

#### a. Bona Fide Dispute

To demonstrate the existence of a bona fide dispute, the parties should provide the district court with the following information:

(1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay);

(2) a description of the employer's business and the type of work performed by the employees;

(3) the employer's reasons for disputing the employees' right to a minimum wage or overtime;

(4) the employees' justification for the disputed wages; and

(5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

Gambrell, 2012 WL 162403, at *3.

The parties assert that a bona fide dispute exists over whether noncompensable Section 203(o) activities can constitute a principal activity and whether the time for which the opt-in plaintiffs seek recovery is *de minimus* and thus noncompensable.[4]  The parties also note that significant factual issues exist.  See Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement (Doc. #55) at 4-5.  Therefore, the parties have shown that a bona fide dispute exists.

### b.   Fair And Equitable Settlement

To determine whether a proposed settlement under Section 216(b) is fair and equitable to all parties, courts regularly apply the fairness factors that apply to a proposed class action settlement under Rule 23(e), Fed. R. Civ. P.  These include (1) whether the proposed settlement has been fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.  Gambrell, 2012 WL 162403, at *3 (citing McCaffrey, 2011 WL 32436, at *5).

---

[4]   The Tenth Circuit has stated in dicta that Section 203(o) "does not apply to sanitizing or walking time." Salazar v. Butterball, LLC, 644 F.3d 1130, 1142 (10th Cir. 2011). In Sandifer v. United States Steel Corp., 678 F.3d 590 (7th Cir. 2012), the Seventh Circuit held that the time which steelworkers spent changing into protective work clothes, including flame-retardant pants, work gloves, steel-toed boots and safety glasses, was noncompensable under Section 203(o) of the FLSA.  See id. at 595.  It also held that such noncompensable activity could not be considered a principal activity.  See id. at 596.  The Supreme Court affirmed the Seventh Circuit's decision that the activity was noncompensable under Section 203(o), but it did not decide whether the noncompensable activities could be principal activities because it did not grant certiorari on the issue.  See 134 S. Ct. 870, 874 n.3 (2014).

Counsel for the parties believe that the settlement is fair and reasonable, and while the parties dispute the factual basis of plaintiffs' claims, the value of immediate recovery would likely outweigh the mere possibility of recovery after protracted litigation. Nonetheless, for the reasons discussed below, the Court overrules the motion.

### i. Translated Settlement Agreement

As with Barbosa's and Gaytan's affidavits, the parties provide no evidence that the Spanish version of the settlement agreement is an accurate translation. Without some information about the translator's qualifications, skills or identity and his or her actual certification or declaration, the Court cannot determine whether the settlement is fair. See Xavier, supra.

### ii. Release

It is inappropriate to require plaintiffs to sign overly-broad releases to receive settlement proceeds in FLSA cases. See Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV, 2012 WL 5306273, at *5 (D. Kan. Oct. 29, 2012). The release here appears to insulate defendant's plan administrator from plan-related benefit claims, which is overly broad and unfair to the opt-in plaintiffs.

### iii. Confidentiality Clause

The settlement agreement prohibits certain communications regarding the settlement. The confidentiality clause states as follows:

> Communications Regarding Settlement. The Opt-In Plaintiffs and Plaintiffs' Counsel agree not to publicize this Settlement Agreement or any of the negotiations relating, or leading, to this Settlement Agreement in any way. This includes, but is not limited to, an agreement not to communicate with the press in any way, issue any press release or otherwise promote the lawsuit, its resolution and/or the alleged results achieved in any marketing materials, including any website or other public media. Plaintiffs' Counsel may disclose the fact of the Lawsuit, that they represented Opt-In Plaintiffs, and that the Lawsuit has been

> resolved. The Opt-In Plaintiffs may disclose the fact of the Lawsuit and that the Lawsuit has been resolved.

See Settlement Agreement ¶ 7, Ex. A to Joint Motion (Doc. #55). This confidentiality clause cannot be enforced. The settlement agreement is a public document, and its terms are in the public domain. Such a confidentiality agreement "contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights." Dees, 706 F. Supp. 2d at 1242.

### iv.     Calculation

The current calculation of the settlement award offers a larger settlement return to those who already received donning and doffing pay.[5] This does not serve the purpose of the FLSA,

---

[5] The settlement allocation lists each opt-in plaintiff, the number of weeks worked in a gang time non-donning and doffing position, the number of weeks worked in a gang time donning and doffing position, the total number of gang time weeks worked, plaintiff's multiplier, and the settlement amount for each opt-in plaintiff assuming a $196,680.00 settlement fund. See Settlement Allocation, Ex. B to Joint Motion (Doc. #55). Opt-in plaintiff Rosa Maria Arinaga worked 163.71 weeks in a gang time position without donning and doffing pay (therefore, without the additional nine minutes of pay per day). She worked no gang time weeks with donning and doffing pay. Her total share of the allocation is a multiplier of 163.71. Her total settlement entitlement, assuming a net settlement fund of $196,680.00, would be $552.23. See id. at 1.

In contrast, opt-in plaintiff Yolanda V. Delgado did not work any weeks of gang time in a non-donning and doffing pay position, and she worked a total of 162.71 weeks of gang time in a donning and doffing position. For each day receiving donning and doffing pay, Delagado received an additional nine minutes of hourly pay. Multiplying the number of weeks Delagado worked by 1.5 points as required by the formula for calculating the settlement, Delagado's multiplier equals 244.07. See Settlement Agreement ¶ 3(b), Ex. A to Joint Motion (Doc. #55) ("Opt-In Plaintiff shall receive one point for each week worked in a Gang Time position that did not receive an additional nine minutes of donning and doffing pay ("Non-DD Pay Position") and 1.5 points for each week worked in a Gang Time position that received an additional nine minutes of donning and doffing pay ("DD Pay Position"); Settlement Allocation, Ex. B to Joint Motion (Doc. #55) at 2. The confusing result of the formula is that although Arinaga worked more shifts than Delgado and did not receive any additional compensation, Delgado would receive a larger portion of the settlement proceeds: Based on a net settlement fund of
(continued…)

which is to ensure that "all our able-bodied working men and women [receive] a fair day's pay for a fair day's work."  Dees v. Hydrandry, Inc., 706 F. Supp. 2d 1227, 1231 (M.D. Fla. 2010) (quoting Letter to Congress from President Franklin D. Roosevelt (May 24, 1937) (reprinted in H.R. Rep. No. 101-260 (Sept. 26, 1989), 1989 U.S.C.C.A.N. 696-97) (internal quotation marks omitted).  Furthermore, from the record, it is unclear how much plaintiffs believe they are owed when construing the factual discrepancies in their favor.  Without more information regarding the difference in multiplier between the two groups, the Court cannot find that the proposed settlement is fair and equitable.

### v.     Effect Of Dismissal

Section 8(b) of the settlement agreement states as follows:

(i)     To participate in the Settlement and receive settlement funds, an Opt-in Plaintiff must execute a Release in the form attached as Exhibit C by the Release Return Date.

(ii)    Any Opt-in Plaintiff who does not execute a Release in the form attached as Exhibit C shall forfeit any right to distribution from the Total Settlement Amount and be dismissed from the lawsuit with prejudice, along with all other Opt-In Plaintiffs, at the time the Court enters the Final Order and Judgment.

Settlement Agreement, Ex. A to Joint Motion (Doc. #55).  The proposed notice of settlement advises Opt-In Plaintiffs:

If you do not respond to this settlement offer before the deadline, you will receive no settlement payment from National Beef, and you will be dismissed from the lawsuit, along with the other Opt-In Plaintiffs, at the time the Court enters the final order approving the settlement and judgment dismissing the lawsuit with prejudice.

Proposed Notice Of Settlement ¶ II.D., Ex. C to Joint Motion (Doc. #55).

---

(…continued)
$196,680.00, Arinaga would receive $552.23 and Delgado would receive $823.29.  See Settlement Allocation, Ex. B to Joint Motion (Doc. #55) at 1-2.

The record provides no information regarding what recourse, if any, a class member would have if he or she disagrees with the pro rata determination. All opt-in plaintiffs, regardless whether they opt in to the settlement and receive proceeds, are dismissed from the case with prejudice. In the interest of fairness, opt-in plaintiffs should receive the opportunity to withdraw from the opt-in class, or opt-in plaintiffs who fail to return the notice of settlement form should be dismissed without prejudice.

### c. Proposed Incentive Fee

In support of their application for approval of the proposed incentive fees, the parties submit that each named plaintiff is entitled to $3,500. Although the parties provide a list of the various duties associated with their status as class representatives, they fail to provide the Court with the number of hours each plaintiff devoted to their class representative duties. Without this information, the Court cannot evaluate whether the proposed incentive fees are fair to the named plaintiffs and the other opt-in plaintiffs.

### B. Proposed Attorneys' Fees And Costs Award

Because the parties have failed to show that the proposed settlement award is fair and equitable, the proposal for attorneys' fees and costs is premature. The Court notes, however, that National Beef agreed to not oppose or object to plaintiffs' request for attorneys' fees and costs. See Settlement Agreement ¶ 3(c), Ex. A to Joint Motion (Doc. #55). When a settlement agreement is reached and defendant agrees to not oppose an award of attorneys' fees from a common fund, defendant has no incentive to bargain for lower fees. Therefore, the parties should be aware that the Court intends to skeptically examine and analyze the fee and cost

proposal.[6]  With that in mind, the parties may wish to supplement the record and amend their motion as necessary to properly support any future application for attorneys' fees and costs.[7]

---

[6]    In Bruner v. Sprint/United Management Co., Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762 (D. Kan. July 14, 2009), the Court warned that it would "skeptically examine and presumably overrule any fee proposal which is presented in a non-adversarial context." See id. at *10.  The Court stated

> For the record, the Court notes its concern about settlement agreements in which defendants agree not to object to or oppose any given fee request.  Such agreement[s] deprive[] the court of a full record and benefits of the adversary process.  They encourage plaintiffs' counsel to maintain inadequate contemporaneous time records and to submit their fee requests on records which cannot withstand the adversary process.  They promote a lackadaisical approach to fee litigation — regrettably forcing the Court to act as adversary to plaintiffs' counsel in examining fee applications.  They can lead to unreasonable fee requests.  To top it off, such stipulations have no apparent benefit to plaintiffs.  The only beneficiaries are plaintiffs' counsel . . . who would insulate their fee requests from scrutiny through the adversary process.

See id.

[7]    For instance, plaintiffs' counsel requests reimbursement of $15,577.38 in expert fees as litigation costs.  See Case Expenses, Ex. 2 to Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #56) at 1.  It is not clear from the settlement agreement that the allocation of $41,000 in costs includes these expert witness fees.  In fact, the settlement agreement makes no reference to expert fees.  Absent contractual agreement, expert fees are not recoverable under the FLSA.  See W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83 (1991) (fees for services by experts in civil rights litigation unrecoverable under 42 U.S.C. § 1988); Gray v. Phillips Petroleum Co., 971 F.2d 591 (10th Cir. 1992) (applying Casey to ADEA case to bar shifting of expert witness fees absent explicit statutory or contractual authority following settlement); see also Pub. L. No. 102-166, 105 Stat 1071; 42 U.S.C.A. § 1988(c); 42 U.S.C. § 2000e-5(k) (amending Civil Rights Act of 1991, Title VII and Americans with Disabilities Act to permit recovery of expert fees after Casey, but failing to amend FLSA; expert fees therefore unrecoverable under FLSA).  See also Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 Fed. App'x 684, 686-87 (11th Cir. 2011) (district court did not err by holding that plaintiff could not recover expert witness fees because FLSA does not operate to shift witness fees unless by contract).

Were unapproved fees to revert to defendant rather than plaintiffs, defendant likely would have opposed plaintiffs' counsels' application for expert fees as costs.  See Settlement Agreement ¶ 3(c), Ex. A to Joint Motion (Doc. #55) ("If the Court denies any portion of the requested fees, such amount will be distributed to the Opt-In Plaintiffs.").  As the settlement

(continued…)

**IT IS THEREFORE ORDERED** that the parties' Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement (Doc. #55) and plaintiffs' Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #56), both filed October 14, 2013, be and hereby are **OVERRULED**.  On or before **October 31, 2014**, the parties may file a renewed motion to approve a proposed settlement.

Dated this 10th day of October, 2014 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

(…continued)
agreement currently stands, however, defendant has no incentive to question the request for costs.  In fact, defendant has incentive to *not* question plaintiffs' application because defendant will owe employment taxes on funds that revert to plaintiffs.  See id. ¶ 4 (Doc. #55) ("For tax purposes, 50% of each Opt-in Plaintiff's payment pursuant to Paragraph 3(b) shall be treated as wages and 50% of such payment shall be treated as liquidated damages and interest.").  Defendant's total settlement liability of $350,000 does not include payroll taxes.  See id. ¶ 3(a) ("National Beef's settlement liability, other than its share of payroll taxes, shall not exceed $350,000 under any circumstances.").