## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VALENTE SANDOVAL BARBOSA and )
CAROLINA GAYTAN, on behalf of themselves and )
all others similarly situated, )
                                              )
                    **Plaintiffs,** )
                                              )      **CIVIL ACTION**
**v.** )
                                              )      **No. 12-2311-KHV**
**NATIONAL BEEF PACKING COMPANY, LLC,** )
                                              )
                    **Defendant.** )
_____ )

### MEMORANDUM AND ORDER

Valente Sandoval Barbosa and Carolina Gaytan, on behalf of themselves and others similarly situated, bring suit against National Beef Packing Company, LLC, seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This matter is before the Court on the parties' Second Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement ("Second Joint Motion") (Doc. #64) and Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #65), both filed November 21, 2014. For the reasons stated below, the Court sustains both motions in part.

### Factual Background

#### I.    Lawsuit And Claims

Defendant operates a beef slaughtering and processing plant which employs more than 2,000 hourly employees in Liberal, Kansas. See Complaint (Doc. #1) filed May 21, 2012, ¶¶ 3-4; First Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement ("Joint Motion") (Doc. #55) at 2. During the relevant time, defendant required hourly

production employees to use an electronic security card, or "ID badge."  Barbosa Aff. ¶ 6, Ex. 1 to Plaintiffs' Memorandum In Support Of Plaintiffs' Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA ("Plaintiffs' Memorandum") (Doc. #10) filed July 23, 2012; Gaytan Aff. ¶ 6, Ex. 2 to Plaintiffs' Memorandum (Doc. #10).  Upon arriving at work each day, employees would swipe their ID badges to enter the plant's security gate. Barbosa Aff. ¶ 6; Gaytan Aff. ¶ 6.  After entering the plant, they would again swipe the badges to clock in and out of their shifts.  Barbosa Aff. ¶¶ 7-8; Gaytan Aff. ¶¶ 7-8.

Defendant did not use the badges to record compensable wages.  Barbosa Aff. ¶ 9; Gaytan Aff. ¶ 9.  Instead, defendant used a "gang time" system, which paid hourly production employees for only the time that they work on a running production line.  Barbosa Aff. ¶¶ 10-11; Gaytan Aff. ¶¶ 10-11.  Defendant did not compensate hourly production employees for time spent at the plant but away from their respective production lines, or for time spent at the production line when it was not moving and producing product.  Barbosa Aff. ¶¶ 10-11; Gaytan Aff. ¶¶ 10-11.  Defendant paid some hourly production employees additional pay, up to nine minutes, for certain jobs, which the parties refer to as "DD Pay Positions."  Second Joint Motion (Doc. #64) at 7-8; Barbosa Aff. ¶ 12; Gaytan Aff. ¶ 12.  The parties refer to jobs for which defendant did not provide donning and doffing pay as "Non-DD Pay Positions."  Second Joint Motion (Doc. #64) at 7-8.

Under the "gang time" system, both DD Pay Position and Non-DD Pay Position hourly production employees typically spent uncompensated time before, during and after each shift performing – and waiting in line to perform – various tasks.  Barbosa Aff. ¶ 13; Gaytan Aff. ¶ 13.  The daily tasks which hourly production employees typically performed without pay included (1) pre-shift waiting in line to receive and/or to sanitize equipment; (2) pre-shift

sanitizing equipment; (3) pre-shift walking from the locker room to sanitization stations and assigned work stations; (4) doffing protective gear during unpaid lunch breaks; (5) waiting in line to receive and receiving sanitary equipment during unpaid lunch breaks; (6) waiting in line to sanitize equipment and sanitizing equipment during unpaid lunch breaks; (7) re-donning protective gear during unpaid lunch breaks; (8) processing meat on the production line after the line has stopped running at the end of the shift; (9) post-shift waiting in line to sanitize equipment and sanitizing equipment; (10) post-shift waiting in line for inspection of sanitized equipment; (11) post-shift waiting in line to receive protective equipment for the next shift; and (12) post-shift walking from the production floor to sanitization stations and the locker room. Barbosa Aff. ¶ 14; Gaytan Aff. ¶ 14.

On May 21, 2012, Valente Sandoval Barbosa and Carolina Gaytan filed putative collective action claims for alleged violations of the FLSA. See Complaint (Doc. #1). Plaintiffs asserted that defendant's gang time compensation system failed to fully compensate hourly production workers for all hours worked. See Second Joint Motion (Doc. #64) at 1. Under the FLSA, plaintiffs seek damages for straight-time and overtime compensation and liquidated damages for time spent performing uncompensated tasks. See Complaint (Doc. #1) at 7 ¶¶ a, c. Plaintiffs also seek attorneys' fees, expert fees and other costs and expenses. Id. at 7 ¶ d. Plaintiffs do not seek recovery for the time spent donning and doffing protective equipment, but they assert that these activities serve as principal activities under Section 203(c) of the FLSA, i.e. that they serve as the "bookends" of the continuous workday such that all activity occurring between the bookends is compensable. See Second Joint Motion (Doc. #64) at 1-2.

## II.    Conditional Class Certification And Notice

On July 23, 2012, plaintiffs filed their Motion For Conditional Certification Of Class Claims Under § 216(b) Of The FLSA (Doc. #9).  In support, plaintiffs submitted nearly identical affidavits.  The affidavits stated that from April of 2010 until filing the motion on July 23, 2012, Barbosa worked as an hourly production employee.  Barbosa Aff. ¶ 1.  From March of 2000 to December of 2010, Gaytan worked as an hourly production employee.  Gaytan Aff. ¶ 1.

On January 31, 2013, the Court sustained plaintiffs' motion in part.  See Memorandum And Order (Doc. #21) at 10-11.  The Court conditionally certified a class of "all hourly production employees who have been subject to defendant's 'gang time' compensation practices at defendant's facility in Liberal, Kansas, for the period of three years prior to [January 31, 2013]."  Id. at 10.  The Court also approved Barbosa and Gaytan as class representatives and appointed plaintiffs' counsel, Mark A. Kistler and Michael F. Brady of Brady & Associates Law Office, to serve as counsel for the conditional class.  See id. at 10.  The Court ordered conditions about notice to putative class members and 480 eligible plaintiffs opted in to the litigation.  See id.; Second Joint Motion (Doc. #64) at 2.

## III.    Settlement And Procedural Posture

The parties participated in mediation on July 10, 2013.  Thereafter they agreed to settle. Under the terms of the settlement, National Beef will pay a total of no more than $350,000, which will be allocated as follows:

$196,680 available to the 480 collective action members;[1]

---

[1]    The Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. # 56) reflects that $201,680 is available to the collection action members.  Id. at 7.  This figure reflects the amount available before plaintiffs' renewed motion for attorneys' fees and costs requested $5,000 in additional litigation costs.  See Memorandum And Order (Doc. #59) at 5 n.2; Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #65) at 7 ("The allocation (continued…)

$100,320 for attorneys' fees;
$46,000 for litigation costs;
$3,500 service payment to plaintiff Barbosa; and
$3,500 service payment to plaintiff Gaytan.

Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #65) at 7;

Revised Settlement Agreement ¶ 3(a), (c)-(d), Ex. B to Second Joint Motion (Doc. #64). On

October 14, 2013, the parties filed their Joint Motion (Doc. #55) and Unopposed Motion For

Approval Of Attorneys' Fees And Costs (Doc. #56). On October 10, 2014, the Court overruled

the parties' Joint Motion because (1) it could not certify the final collective action, and (2) the

settlement agreement was not fair and equitable to all parties concerned. See Memorandum And

Order (Doc. #59) at 11-17. More specifically (1) plaintiffs relied upon translated affidavits to

support the application for final collective action certification, but failed to provide the

translator's identity or any declaration or certification of the translator's qualifications;

(2) plaintiffs provided translated versions of the original proposed settlement agreement, but

failed to provide the translator's identity or any declaration or certification of the translator's

qualifications; (3) the language in the original release was overly broad; (4) the settlement

agreement's proposed confidentiality clause was unenforceable; (5) the multiplier used to

calculate settlement awards for those who received donning and doffing pay seemed

disproportionate to the multiplier used for those who did not receive donning and doffing pay;

(6) the original settlement did not address what recourse class members would have if they

---

(…continued)
of the settlement proceeds is as follows: $201,680 available to the 480 Collective Action
Members; $100,320 for attorneys' fees; $46,000 for costs; $3,500 incentive pay to Plaintiff
Barbosa; and $3,500 incentive pay to Plaintiff Gaytan."). The Court assumes this was an
oversight. The settlement agreement states that the collective actions members are entitled to a
"Share Distribution Percentage multiplied by the Total Settlement Amount minus
Court-approved attorneys' fees and costs [and] Court-approved service awards," or $196,680.
Revised Settlement Agreement ¶ 3(b).

disagreed with the pro rata determination; and (7) plaintiffs did not provide enough information to justify the service awards of $3,500 to named plaintiffs.  See id.  The Court thus overruled as premature the parties' Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #56).  See Memorandum And Order (Doc. #59) at 17–18.

On November 21, 2014, the parties filed their Second Joint Motion (Doc. #64) and Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #65).  The revised settlement agreement corrects several problems with the original settlement.  Compare Settlement Agreement, Ex. A to Joint Motion (Doc. #55), and Notice of Settlement, Ex. C to Joint Motion (Doc. #55); with Revised Settlement Agreement and Notice Of Settlement, Ex. C to Second Joint Motion (Doc. #64).  In addition, plaintiffs propose, and defendant does not oppose, $100,320 for attorneys' fees and $46,000 for litigation costs incurred by plaintiffs, including plaintiffs' expert fees.  Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs (Doc. #65) at 7–8; Revised Settlement Agreement ¶ 3(c).  Plaintiff also proposes that each named plaintiff receive a service award in the amount of $3,500.  Second Joint Motion (Doc. #64) at 11; Revised Settlement Agreement ¶ 3(d).

## Legal Standards

### I.    FLSA Collective Action Settlement

The provisions of the FLSA are not subject to private negotiation or bargaining between employers and employees because the underlying legislative policies prohibit employees from waiving their rights to the minimum statutory rates and liquidated damages.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982); Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1234 (M.D. Fla. 2010); Collins v. Sanderson Farms, Inc., 568 F. Supp.2d 714, 718 (E.D. La. 2008).  Therefore,

employees may settle or compromise FLSA back wage claims in one of two ways.  Lynn's Food Stores, Inc., 679 F.2d at 1352.  First, under 29 U.S.C. § 216(c), the Secretary of Labor may supervise the payment of unpaid wages to employees.  See id. at 1353.  Second, in the context of a private action to recover unpaid wages, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.  See id.; Hohnke v. United States, 69 Fed. Cl. 170, 178-79 (Fed. Cl. 2005).  Here, the parties seek court approval of a settlement obtained in the context of a private action to recover unpaid wages.

When employees file suit to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination that the settlement is fair and reasonable.  See Lynn's Food Stores, Inc., 679 F.2d at 1353.  If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  See id. at 1354.

To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.  See id.  The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. See Peterson v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).  Further, when a plaintiff has voluntarily assumed the fiduciary role of class representative, the Court must determine "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members."  Id. (quoting Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978)).  The Court must make some final class certification finding before it can approve an FLSA collective

action settlement.[2]  McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at

*3 (D. Kan. Jan. 5, 2011).

## II.     Award Of Attorneys' Fees Under The FLSA

The FLSA requires that settlement agreements include an award of reasonable attorneys'

fees and the costs of the actions.   29 U.S.C. § 216(b); Gambrell v. Weber Carpet, Inc.,

No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan. 19, 2012); Peterson, 2011 WL

3793963, at *4.  Though the Court has discretion to determine the amount and reasonableness of

the fee, the FLSA fee award is mandatory.  Gambrell, 2012 WL 162403, at *3 (citing Wright v.

U-Let-Us Skycap Servs., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986)).

### Analysis

## I.     Settlement Approval

To approve the proposed FLSA settlement here, the Court must (1) make a final

certification ruling, (2) determine that the terms of the proposed settlement are fair and

---

[2]        The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).  In part, Section 216(b) states as follows:

> An action to recover [for FLSA violations] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

In the Tenth Circuit, district courts use a two-step process to determine whether plaintiffs are "similarly situated" for purposes of Section 216(b).  First, the courts apply a fairly lenient standard for purposes of conditional certification during the course of discovery.  See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001).  Then, during the second stage, usually prompted by a motion to decertify, the courts apply a stricter standard.  See id.

reasonable and (3) see that the settlement contains an award of reasonable attorneys' fees.  See Lynn's Food Stores, Inc., 679 F.2d at 1354; McCaffrey, 2011 WL 32436, at *2.

> ### A.      Final Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).  In its previous order, the Court denied final collective action certification because plaintiffs failed to provide evidence that the Spanish affidavits of Gaytan and Barbosa were accurate translations of the unsigned English affidavits, and therefore the Court could not determine whether final collective action certification was warranted.  See Memorandum And Order (Doc. #59) at 11.  In support of the Second Joint Motion, plaintiffs now provide this evidence and the Court finds that the translated affidavits are accurate translations of the unsigned English versions.[3]  Now the Court can analyze whether the opt-in plaintiffs are similarly situated, considering (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Thiessen v. GE Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Kaiser v. At The Beach, Inc., No. 08-cv-5886-TCK-FHM, 2010 WL 5114729, at *3 n.6 (N.D. Okla. Dec. 9, 2010).

Plaintiffs ask the Court to certify a final collective action of 480 current and former hourly production employees who were subject to defendant's "gang time" compensation practices at defendant's facility in Liberal, Kansas.  Second Joint Motion (Doc. #64); Memorandum And Order (Doc. #21) filed January 31, 2013 (granting conditional collective

---

[3]      Plaintiffs provided the translator's identity and requisite qualifications.  See Second Joint Motion (Doc. #64) at 5.  Plaintiffs also provided the translator's affidavit stating his qualifications and certifying that Gaytan's and Barbosa's Spanish affidavits accurately translate to the unsigned English versions.  See Forks Aff. ¶¶ 6, 8.

action certification).   Plaintiffs' affidavits show that each plaintiff worked under defendant's "gang time" policy.   Barbosa and Gaytan contend that the donning and doffing of standard and specialized safety gear started the clock, or served as bookends to the workday.   They allege that they and similarly situated employees were improperly denied pay for time spent on "various tasks, including doffing and re-donning protective gear during unpaid meal breaks, pre-shift walking to production lines, post-shift walking from production lines, waiting in line for equipment, waiting in line to clean equipment, cleaning equipment, waiting at or near their assigned production line when the production line was not running, and finalizing the processing of meat on their assigned production lines at the end of shifts."  Id. at 2.   Workers in DD Pay Positions had to wear and wash unique and specialized equipment, while workers in Non-DD Pay Positions wore standard protective equipment.   Second Joint Motion (Doc. #64) at 8 n.2. Although the duties of the DD Pay Position and Non-DD Pay Positions have some differences, including whether the workers received additional pay for positions requiring unique or specialized equipment, all of the conditionally certified class worked under defendant's "gang time" pay scheme.   Therefore, as relevant to plaintiffs' claims, their jobs were substantially similar.

In regard to defenses to claims of the various plaintiffs, defendant generally disputes liability as to all opt-in plaintiffs and asserts that plaintiffs' activities putting on and taking off standard or specialized safety clothing and equipment are not compensable under Section 203(o) of the FLSA, and therefore cannot constitute principal activities starting the continuous workday. Defendant asserts this defense as to all opt-in plaintiffs, whether in DD Pay Positions or Non-DD Pay Positions.   Because opt-in plaintiffs in Non-DD Pay Positions only wore standard (not specialized) equipment, the parties agree that defendant has an additional strong defense that the

uncompensated activities were *de minimis* because they were not indispensable to the workday. The Court does not believe this additional defense is fatal to final certification.  All of the opt-in plaintiffs were subject to defendant's gang time policy, through (1) DD Pay Positions, (2) Non-DD Pay Positions or (3) a combination of both.  Furthermore, the parties account for the differences and strengths of the available defenses by assigning a lower multiplier, and thus a smaller per rata portion of the settlement, to the opt-in plaintiffs in Non-DD Pay Positions. Therefore, as relevant to plaintiff's claims and considering defendant's defenses, opt-in plaintiffs are similarly situated.

Fairness and procedural considerations – such as allowing plaintiffs to pool their resources for litigation – favor collective treatment here.  Fulton v. TLC Lawn Care, Inc., No. 10-2645, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012).

For these reasons, the Court sustains plaintiffs' request for final collective action certification.  See Sanderson v. Unilever Supply Chain, Inc., 10-cv-0775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011); Peterson, 2011 WL 3793963, at *6-7.  Pursuant to the Court's order granting conditional certification, Barbosa and Gaytan are class representatives and plaintiffs' counsel are class counsel.

### B.        FLSA Collective Action Proposed Settlement

To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorneys' fees.  See McCaffrey, 2011 WL 32436, at *2.  In its previous order, the Court found a bona fide dispute, so now must only determine whether the settlement is fair and equitable and whether the requested attorneys' fees and costs are reasonable.  See Memorandum And Order (Doc. #59) at 13.

To determine whether a proposed settlement under Section 216(b) is fair and equitable, courts regularly apply the fairness factors that apply to a proposed class action settlement under Rule 23(e), Fed. R. Civ. P.  These include (1) whether the proposed settlement has been fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.  Gambrell, 2012 WL 162403, at *3 (citing McCaffrey, 2011 WL 32436, at *5).

The Court also considers various contextual factors pertinent to the statutory purpose of the FLSA, some of which overlap with the above factors.  These include: (1) defendant's business, (2) the type of work performed by plaintiffs, (3) the facts underlying plaintiffs' reasons for justifying their claims, (4) defendant's reasons for disputing plaintiffs' claims, (5) the relative strength and weaknesses of plaintiffs' claims, (6) the relative strength and weaknesses of defendant's defenses, (7) whether the parties dispute the computation of wages owed, (8) each party's estimate of the number of hours worked and the applicable wage and (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.  Grove v. ZW Tech, Inc., No. 11-2445-KHV, 2012 WL 4867226, at *3 (D. Kan. Oct. 15, 2012).

Counsel for the parties believe that the settlement is fair and reasonable, and while the parties dispute the factual basis of plaintiffs' claims, the value of immediate recovery would likely outweigh the mere possibility of recovery after protracted litigation.  See Second Joint Motion (Doc. #64).

In the Second Joint Motion, the parties addressed the Court's concerns with regard to the following: (1) plaintiffs' translated settlement agreement; (2) the general release of claims language; (3) the settlement agreement's confidentiality clause, (4) the effect of dismissal with prejudice on all opt-in plaintiffs; (5) the multiplier used to calculate settlement amounts for donning and doffing employees and non-donning and doffing employees; and (6) the proposed service payments to the named plaintiffs.[4]  See Memorandum And Order (Doc. #59) at 14-17; Second Joint Motion (Doc. #64) at 3-4.  Upon review of the parties' Second Joint Motion, the

---

[4]      The parties (1) provided translation certifications; (2) removed defendant's "benefit plan, plan fiduciaries, and/or administrators, and assigns" from the revised settlement agreement and releases; (3) modified the confidentiality clause to limit plaintiffs' counsel from promoting the lawsuit via the press; and (4) modified the agreement to reflect that opt-in plaintiffs who do not opt in to the settlement are dismissed without prejudice.  See Second Joint Motion (Doc. #64) at 6–7, 10; Revised Settlement Agreement ¶¶ 5, 7, 8(b)(ii), Ex. B to Second Joint Motion (Doc. #64); Notice of Settlement ¶¶ II.D, IV, Ex. C to Second Joint Motion (Doc. #64).

The parties also explained the difference between the multipliers.  The current calculation of the settlement award offers a larger settlement return to those who already received donning and doffing pay.  See Memorandum And Order (Doc. #59) at 15 n.5.  The parties explain that this is due to the risk of litigation and because defendant has much stronger arguments against non-donning and doffing paid plaintiffs.  See Second Joint Motion (Doc. # 64) at 7–9.  While donning and doffing paid plaintiffs have been compensated for some of their additional time, they have a stronger legal argument for what constitute the principal activities that start and end their workdays.  In contrast, defendant has much stronger *de minimis* defenses against non-donning and doffing paid plaintiffs.  See id. at 9 (citing several cases where non-donning and doffing paid plaintiffs were not subjected to compensation for preliminary tasks, such as changing into and out of standard protective gear); see also 29 C.F.R. § 790.8(c) ("If changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the act."); Salazar v. Butterball, LLC, 644 F.3d 1130, 1138–39 (10th Cir. 2011) (standard protective equipment are considered clothes under FLSA Section 203(o) and changing into and out of these items excluded from compensation); Harvey v. AB Electrolux, 9 F. Supp.3d 950, 967 (N.D. Iowa 2014) (changing into and out of standard protective gear and walking to and from work stations not principal activities that begin and end workday).  While Tenth Circuit law is unclear what principal activities start and end the workday for non-donning and doffing paid plaintiffs, it is clear that changing into and out of standard clothes are not compensable tasks.

revised settlement and the proposed revised release, the Court modifies the named plaintiffs' service awards and otherwise finds the settlement fair and reasonable under <u>Gambrell</u> and <u>Grove</u>.

Regarding the service awards, the parties assert that Barbosa and Gaytan are each entitled to a $3,500 award.  <u>Second Joint Motion</u> (Doc. #64) at 10–11.  Plaintiffs now provide evidence that Barbosa worked 24.1 hours and Gaytan worked 9.6 hours on the case.[5]  <u>Second Joint Motion</u> (Doc. #64) at 10; <u>Kistler Aff.</u> ¶¶ 6–11, Ex. D to <u>Second Joint Motion</u>.  The parties ask the Court to approve the awards because it approved this sum for named plaintiffs in a similar case.[6] <u>Second Joint Motion</u> (Doc. #64) at 11.  Given the low and disparate amounts of time each named plaintiff spent working on this case, the Court is not convinced that these service awards are fair and reasonable.  Furthermore, the Court finds that $20.00 per hour for each plaintiff is fair and reasonable.[7]  The Court awards Barbosa $482.00 and Gaytan $192.00, with the remaining

---

[5]    Plaintiffs state that Barbosa spent approximately 8.1 hours and Gaytan spent approximately 7.1 hours "communicating with counsel regarding the Complaint prior to its filing, communicating regarding an affidavit in support of the motion for conditional certification, and preparing for and attending depositions."  <u>Second Joint Motion</u> (Doc. #64) at 10.  Furthermore, Barbosa spent 16 hours traveling to and from his deposition, while Gaytan spent one hour traveling to and from her deposition.  <u>Id.</u>

[6]    The parties cite to the <u>Memorandum In Support Of Joint Motion For Approval Of FLSA Settlement</u> (Doc. #298), filed April 13, 2012, and the <u>Order Approving FLSA Settlement</u> (Doc. #302), filed April 30, 2012, in <u>McDonald v. Kellogg Co.</u>, No. 08-cv-2473-JWL.  While it is unclear how many hours each named plaintiff worked in that case, they each "expended considerable time and effort."  <u>Memorandum In Support Of Joint Motion for Approval Of FLSA Settlement</u> (Doc. #298), No. 08-cv-2473-JWL, at 12.  It appears that the Barbosa and Gaytan did not do the amount of work as the named plaintiffs in <u>McDonald</u>.

[7]    This Court has lowered service awards for named plaintiffs in previous FLSA collective actions based on the amount of time named plaintiffs worked on the case.  <u>See, e.g.</u>, <u>Peterson</u>, 2011 WL 3793963, at *8; <u>see also</u> <u>In re Sprint Corp. ERISA Litig.</u>, 443 F. Supp.2d 1249, 1271 (D. Kan. 2006) (reducing service awards from $15,000 to $5,000 for each named plaintiff spending average of 80 hours each on case).  In <u>Peterson</u>, this Court lowered the named plaintiff's service award from $1,082.30 to $840.00 based on reasonable hourly wages for time the plaintiff spent working the case.  2011 WL 3793963, at *8.  This Court determined that
(continued…)

portions to return to the settlement fund to be dispersed to all opt-in plaintiffs per the settlement agreement.  Revised Settlement Agreement ¶ 3(d).

## II.     Proposed Attorneys' Fees And Costs Award

The FLSA also requires that a settlement agreement include an award of reasonable attorneys' fees and the costs of the action.  Under the settlement agreement, plaintiffs "shall receive attorneys' fees in the amount of 33% of the Total Settlement Amount, after taking remuneration for costs and expenses, including all of Plaintiffs' expert fees, borne as a result of the Lawsuit[.]"  Revised Settlement Agreement, at 7 ¶ 3(c).  Plaintiffs seek, and defendant does not oppose, $100,320 in attorneys' fees and $46,000 in costs, representing 42 per cent of the settlement fund.  To support their requests, plaintiffs have submitted attorney and paralegal time sheets, affidavits from labor and employment lawyers practicing in the area and a table of expenses.  Defendant has agreed not to oppose the request for costs.  Any attorneys' fees and costs not approved by the Court return to the settlement fund to be distributed to plaintiffs.

### A.     Costs

Plaintiffs seek costs for (1) administering notice to 4764 putative opt-in plaintiffs; (2) expert fees to conduct a video-taped time study of employees' activities at defendant's facility in Liberal, Kansas; (3) translation services; (4) filing fees; (5) depositions; (6) travel for plaintiffs' counsel and named plaintiffs for client meetings and depositions; and (7) mediation

---

(…continued)
$20.00 per hour for 42 hours of work was a fair and reasonable service award.  Id.  As in Peterson, the named plaintiffs in this case did not work near as many hours as the named plaintiffs in In re Sprint Corp. ERISA Litig.

costs.[8]  Plaintiffs' counsel states they incurred $51,425.71 in expenses, and requests $46,000 for costs now.  At mediation, defendant agreed to pay $46,000 of plaintiffs' costs, and the revised settlement agreement expressly provides that the $46,000 in costs includes costs for expert fees.  The costs alone equal 13 per cent of the total settlement fund.  Although this is a large percentage, plaintiffs expressly contracted for the payment of expert fees and other costs from the settlement fund, and the video study was reasonably necessary to determine the factual strength of plaintiffs' claims.  Therefore, the Court finds them reasonable.

### B.        Attorneys' Fees

Plaintiffs request $100,320 in attorneys' fees, or 33 per cent of the settlement fund not including costs.  When a common fund is created by settlement, courts have applied one of two methods to determine reasonable attorneys' fee awards: a percentage of the fund or the lodestar method.  See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995).  The Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar.  See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).  In all cases, the Court must consider the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Rosenbaum, 64 F.3d at 1445; Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Del Valley Citizens' Council For Clean Air, 483 U.S. 711, 725 (1987).

---

[8]        Plaintiffs' counsel also seeks reimbursement for their legal expenses related to hiring Downey to analyze plaintiffs' counsel's fees and provide an affidavit in this case.  Case Expenses (Doc. #65-2) at 3.  The Court doubts this expense is properly passed on to plaintiffs.  Plaintiffs' counsel incurred the fee to ensure that they received attorneys' fees, which benefits plaintiffs' counsel, not plaintiffs.  The amount billed for that item was $1,073.  Although the Court does not believe this cost is properly passed to plaintiffs because it was not reasonably necessary, plaintiff's counsel does not seek reimbursement for more than $5,000 of total costs.  Therefore, the costs requested are reasonable.

Where a percentage of the fund approach is used, a district court has discretion to reduce an award of attorneys' fees which is determined would be unreasonable under the lodestar approach.  See Wininger v. SI Mgmt. L.P., 301 F.3d 1115, 1125 (9th Cir. 2002); see also Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000) (neither lodestar nor percentage method should be applied in formulaic or mechanical fashion); In re Petrol. Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997) (where lodestar amount overcompensates attorneys according to benchmark standard, second look to evaluate reasonableness of hours worked and rates claimed is appropriate).  The percentage reflected in a common fund award must be reasonable and, as in statutory fee cases, the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award.  See Brown v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir. 1988).  To determine reasonableness, federal courts have relied heavily on the 12 factors articulated in Johnson, 488 F.2d 714. See, e.g., Ramos, 713 F.2d at 552.

The 12 Johnson factors are as follows: (1) time and labor required, (2) novelty and difficulty of the questions presented in the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards in similar cases.  Rosenbaum, 64 F.3d at 1445; Johnson, 488 F.2d at 717-19.

### 1.    Time And Labor Involved

In <u>Brown</u>, the Tenth Circuit noted that although the "time and labor involved" factor does not necessarily determine the reasonableness of fees in the common fund situation, this factor is still relevant and the availability of time records enhances the trial court's ability to properly evaluate it.  838 F.2d at 451, n. 3.  In awarding attorneys' fees in a common fund case, the "time and labor involved" factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record.  <u>Bruner v. Sprint/United Mgmt. Co.</u>, No. 07-2164-KHV, 2009 WL 2058762, at *5 (D. Kan. July 14, 2009).

The presumptively reasonable attorneys' fee is the product of reasonable hours times a reasonable rate, which yields a "lodestar" figure that is subject to adjustment.  <u>Jackson</u>, 267 F.2d at 1063-64.  Plaintiffs bear the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  <u>Id.</u> (citing <u>Case v. Unified Sch. Dist. No. 233</u>, 157 F.3d 1243, 1249-50 (10th Cir.1998)).  Plaintiffs assert that their lodestar calculation is $103,856.75 and that they request 97 per cent of the lodestar amount, or $100,320.  As shown below, the Court finds that plaintiffs' lodestar calculation is inaccurate and determines the correct lodestar calculation is $54,582.35.

### a.    Hours Reasonably Spent

To calculate the lodestar, the Court first considers the hours reflected in the billing statements which plaintiffs submitted in support of their fee application.  <u>Wilhelm v. TLC Lawn Care, Inc.</u>, No. 07-2465-KHV, 2009 WL 57133, at *2 (D. Kan. Jan. 8, 2009).  The Court examines the hours reasonably spent by plaintiffs' attorneys, both considering the billing judgment of the attorneys and examining each time entry to determine whether the time spent on

that task was reasonable. Id. Billing judgment consists of winnowing the hours actually expended to hours reasonably expended. Lintz v. Am. Gen. Finance, Inc., 87 F.Supp. 2d. 1161, 1165 (D. Kan. 2000). The Court examines whether specific tasks are properly chargeable at all, and then examines the time spent on each task to determine if it is reasonable. Id.

### i.      Travel Time

Travel time should not be compensated at the full hourly rate because such time is inherently unproductive. "Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 per cent of travel time." Aquilino v. Univ. of Kan., 109 F. Supp. 2d 1319, 1326 (D. Kan. 2000). For travel time incurred by plaintiffs' counsel, the Court will deduct half of the time.[9]

### ii.      Block Billing

"Block billing" is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1214-15 (10th Cir. 1998). The Tenth Circuit discourages block billing, and if the party demanding fees has submitted records which include block billing, the Court can apply a general reduction to the requested fees. See Okla. Natural Gas Co., 355 F.Supp. 2d 1246, 1264 (N.D. Okla. 2004). Because the Tenth Circuit does not mandate that block-billed time be wholly denied, the Court exercises its discretion taking

---

[9]      The Court deducts 7.5 of Brady's hours, seven of Kistler's hours, and 7.5 of Kavanaugh's hours.

into account the unreasonableness of certain billing entries to apply a general 50 per cent reduction to block-billed entries.[10]

### iii.     Associate Work

Mark A Kistler is a senior attorney with 14 years of experience that plaintiffs assert justifies an hourly rate of $325 per hour.  Numerous entries in Kistler's time records reflect that he billed substantial hours to work more appropriately tasked to an associate with a lower billing rate.  The Court applies a general reduction to those hours.[11]

### iv.     Duplicate Time Entries

The billing statement includes at least one intra-office communication between attorneys for which both attorneys billed time.  The billing statement further reflects duplication of effort with regard to drafting motions and attending expert studies properly billed only to experts.[12]  This duplication justifies a reduction in the claimed fees. Wilhelm, 2009 WL 57133, at *2.

---

[10]     The Court deducts 20.4 of Kavanaugh's hours for "SITE VISIT – National Beef Plant," which totaled 40.8 hours over three days.

[11]     Kistler billed 76.1 hours researching, reviewing documents, and drafting discovery, initial pleadings, notices, and affidavits – tasks reasonably and properly assigned to an associate.  The Court finds that 51 per cent of those hours, or 38.8 hours, are reasonable as billed by Kistler, as that is the percentage difference between Ballew's and Kistler's reasonable hourly rates, as discussed below.

[12]     Kistler and Ballew both billed for an intra-office conference on July 25, 2013. Furthermore, Ballew billed .2 hours more for the conference than Kistler.  The Court deducts .3 of Kistler's hours and .2 hours from Ballew's hours.  Kistler also billed 7.4 hours to "Draft/revise motion to approve atty fees and costs."  See Billing Statement (Doc. #65-3) at 11.  This appears to duplicate Ballew's efforts.  See id. at 15.  Therefore, the Court deducts 7.4 of Kistler's hours. The Court did not deduct time billed when attorneys divided the labor on the same project.  For example, the Court did not deduct Kistler's time spent drafting and revising the "case history section" of the motion to approve attorneys' fees because Ballew did not bill for that task.  See id. at 11.

(continued…)

The Court finds that the following are the reasonable hours billed by each attorney and paralegal:  Michael F. Brady – 18.75; Mark A. Kistler – 107.7; Brad Kavanaugh – 31.6; Sara Ballew – 10.47; Kathy Corcoran – 104.25; Layne Aingel –16.28; Danielle R. Shirley – 51.9.

### b.      Hourly Rate

To determine the second component of the lodestar figure, the Court fixes the reasonable hourly rate to which plaintiffs' attorneys are entitled, and does so by examining evidence which shows what the market commands for analogous litigation.  Case, 157 F.3d at 1255.  The Court must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."  Id. at 1256.  This requires plaintiffs to submit evidence of the hourly rate the attorney would normally be able to charge in a similar case.  Id. at 1257.  The Court has discretion to increase the rates of attorneys who are experts in that type of litigation, or to reduce the rates for attorneys who are not.  Id.  The Court also has discretion to consider the quality of the lawyer's performance in the case.  Id.  If the Court does not have adequate evidence of prevailing market rates, the Court may use other factors (such as its own knowledge) to set the rate.  Id.  The fee applicant bears the burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  Giesmann, 2008 WL 2549009 at *5 (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)).

---

(…continued)

The Court deducts time billed by Shirley, a paralegal, for attending the mediation (eight hours), as this reflects a duplication of efforts.  Kistler attended and billed for attending the mediation and the mediation is properly billed to an attorney.  The Court further deducts time billed fixing mistakes.  See id. at 3 ("redo affidavits").

Plaintiffs' counsel's requested rates are reflected below:

| Name | Hourly Rate |
|---|---|
| Michael F. Brady, Attorney | $425 |
| Mark A. Kistler, Attorney | $325 |
| Brad Kavanaugh, Attorney | $325 |
| Sara Ballew (Gold), Attorney | $250 |
| Kathy Corcoran, Paralegal | $100 |
| Layne Aingel, Paralegal | $100 |
| Danielle R. Shirley, Paralegal | $100 |

Plaintiffs' counsel provides the affidavit of Michael P. Downey, an attorney at Armstrong Teasdale LLP in St. Louis.  Downey opines that the hourly rates of the attorneys and paralegals who billed on this case are reasonable.  Downey states that he is familiar with the experience levels and skill of the attorneys and staff at Brady & Associates.  Plaintiffs provide some facts regarding the experience levels and skills of the attorneys, and Downey states that the rates charged by the firm are reasonable considering the attorneys' and paralegals' skills and experience.

After reviewing the attorneys' experience, qualifications and skills, the Court finds that Michael F. Brady's rate of $425 per hour, Mark A. Kistler's rate of $325 per hour and Brad Kavanaugh's rate of $325 per hour are reasonable.  Sara Ballew's rate of $250 is not reasonable; at the time she worked on the case, she had only one year of experience.  Therefore, the Court finds appropriate the rate of $180 per hour for attorneys with little or no experience quoted by Downey.  See Downey Aff. (Doc. #65-10), ¶ 7, Ex. 10 to Renewed Motion For Attorneys' Fees (Doc. #65).

Although plaintiffs provide a list of the paralegals' experience and Downey's opinion that the $100 per hour rate is reasonable, plaintiffs provide no evidence of customary regional paralegal rate or the rate charged by plaintiffs' counsel in billable matters.  Downey's opinion on

the matter is conclusory.  Therefore, the Court determines a reasonable hourly fee for paralegals of $75 per hour.

Applying the adjusted reasonable number of hours billed by the prevailing rates, the Court finds the lodestar calculation equals $68,058.10.[13]  Plaintiff's requested fee of $100,320.00 is 147 per cent of the reasonable lodestar calculation.  The Court therefore determines that plaintiffs' requested attorneys' fee is unreasonable considering time worked and labor expended.

### 2.    Novelty And Difficulty

The Court acknowledges that the issues presented were factually complicated, but the skill level and experience of the attorneys here is properly accounted for in the hourly rates requested by plaintiffs.

### 3.    Skill Required To Perform The Legal Service Properly

As discussed in plaintiffs' renewed motion for attorneys' fees, plaintiffs' counsel's firm routinely handles matters like this.  The approved hourly rates in the Court's lodestar analysis reflect plaintiffs' counsel's expertise.

### 4.    Preclusion From Other Work

The record contains no evidence that Brady & Associates was precluded from conducting other business during the time it has worked on this matter.  Plaintiffs' counsel states that the firm expended 258.12 hours of time by attorneys and 181.43 hours by paralegals through the 16 months prior to settlement – obviously not a full-time effort.  While plaintiffs' counsel undoubtedly invested financial resources with the possibility of no return in the form of a

---

[13]    Michael F. Brady – 18.75 x 425 ($7,968.75); Mark A. Kistler – 107.7 x 325 ($35,002.50); Brad Kavanaugh – 31.6 x 325 ($10,270.00); Sara Ballew –10.47 x 180 ($1,884.60); Kathy Corcoran –104.25 x 75 ($7,818.75); Layne Aingel –16.28 x 75 ($1,221.00); Danielle R. Shirley – 51.9 x 75 ($3,892.5).

judgment or settlement, this risk is present with all plaintiffs' litigation.   Bruner, 2009 WL 2058762, at *7.

### 5.        The Customary Fee

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995); Gottlieb v. Barry, 43 F.3d 474,482 (10th Cir. 1994).   This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions.   Bruner, 2009 WL 2058762, at *7.   Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars.   Id.

Plaintiffs' counsel customarily enters into contingency agreements with plaintiffs, although it is unclear for what percentage it typically contracts.   Plaintiffs' combined requested fee and cost award is 42 per cent of the total settlement amount.   Plaintiffs' requested fee alone is 33 per cent of the total settlement amount.   Here, the percentage of the fund requested by counsel is within the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters.

### 6.        Whether The Fee Is Fixed Or Contingent

Here, it is unclear what contingent fee the parties agreed to in the retainer agreement.   In any event, nothing suggests that the plaintiffs had any relevant experience or ability to negotiate the fee contract with plaintiffs' counsel.   See Bruner, 2009 WL 2058762, at *8.   The primary efficacy of the contingent fee agreements in this case is to establish that

plaintiffs are not liable for fees if no recovery is obtained.  Id.  The evidence is not conclusive that a 33 per cent contingent fee, while customary, is reasonable here.  Id.

### 7.  Time Limitations

Plaintiffs' counsel offers no evidence that plaintiffs imposed any time limitations on counsel during the litigation process.  Nor does the record suggest that other circumstances imposed time limitations on plaintiffs' counsel during any stage of the litigation process.  Counsel was not pressured by the time constraints of preparing for trial or responding to unordinary motion practice.  Id.

### 8.  The Amount Involved And Results Obtained

Plaintiffs' counsel obtained favorable results for the settlement class.

### 9.  The Experience, Reputation And Ability Of The Attorneys

As already discussed above, plaintiffs' counsel Brady, Kistler and Kavanaugh are highly experienced in this type of matter.  This experience and skill, and that of the other staff working on this case, is reflected in the reasonable hourly rates in the Court's lodestar analysis above.

### 10.  Undesirability Of The Case

Nothing in the record indicates that this case was undesirable for counsel.  Although plaintiffs note the uncertainty of this litigation, this uncertainty is inherent in all plaintiffs' litigation.

### 11.  Nature And Length Of Professional Relationship With Client

Plaintiffs' counsel presents no evidence of any pre-existing attorney/client relationship with the plaintiffs.  The meaning of this factor, however, and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the Johnson factors

typically state that this particular standard is irrelevant or immaterial.   <u>Bruner</u>, 2009 WL 2058762, at *9 (citing <u>Ruiz v. Estelle</u>, 553 F. Supp. 567, 594 (S.D. Tex. 1982)).

### 12.   Awards In Similar Cases

Plaintiffs' counsel does not explain what percentage of the fund awards courts have awarded.  Rather, plaintiff provides evidence of hourly rates courts have approved.  The Court has approved fee awards requested by Brady & Associates in similar cases.  <u>Alewel v. Dex One Service, Inc.</u>, 13-2312-SAC, 2014 WL 502349, at *2 (D. Kan. Feb. 7, 2014); <u>Peterson</u>, 2011 WL 3793963, at *9 (approving request for 30.5 per cent attorneys' fee award).  In these cases, however, the requested percentage of the fund did not exceed the lodestar calculation.

Plaintiffs' counsel may recover its requested costs of $46,000 and reasonable attorneys' fees of $68,058.10.

**IT IS THEREFORE ORDERED** that the parties' <u>Second Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement</u> (Doc. #64)  and plaintiffs' <u>Renewed Unopposed Motion For Approval Of Attorneys' Fees And Costs</u> (Doc. #65), both filed November 21, 2014,  be and hereby are **SUSTAINED IN PART**.  For settlement purposes, the Court certifies a final collective action under the FLSA, 29 U.S.C. § 216(b), as to the class of 480 hourly production employees listed in Doc. #55-2, exhibit B to the parties' <u>Joint Motion For Approval Of Fair Labor Standards Act Collective Action Settlement</u> (Doc. #55).  The Court appoints Valente Sandoval Barbosa and Carolina Gaytan as class representatives and plaintiffs' counsel, Mark A. Kistler and Michael F. Brady of Brady & Associates Law Office, as class counsel.   The Court approves the parties' revised settlement agreement with the following exceptions:

(1) As to the service awards to the class representatives, Barbosa shall receive $482 and Gaytan shall receive $192.  The remainder of the amounts allotted for service awards – $3,018 for Barbosa and $3,308 for Gaytan – shall return to the settlement fund per the revised settlement agreement.  See Revised Settlement Agreement (Doc. #64-2) ¶ 3(d).

(2) The Court finds $68,058.10 is a reasonable attorneys' fee.  $32,261.9 – the difference between plaintiffs' request and the approved amount – shall return to the settlement fund per the revised settlement agreement.   See Revised Settlement Agreement (Doc. #64-2) ¶ 3(c).

The Court approves plaintiffs' request of $46,000 for litigation costs and finds the request fair and reasonable.  The Court approves the revised notice of settlement (Doc. #64-3), finding that it provides fair and accurate notice.

**On or before September 14, 2015, class counsel shall mail the notice of settlement and withdrawal of consent to join form by First Class mail to the last known address of each settlement class member.**

Dated this 13th day of August, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge